# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| FURNITURE, MATTRESSES & MORE LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Docket No. 1:19-cv-00154-NT |
| TEXAS RUSTIC, INC., | ) ) ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO TRANSFER VENUE

Before me is the Defendant's motion to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, to transfer the action to the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a). ("Def.'s Mot.") (ECF No. 6). For the reasons stated below, the motion to dismiss is **DENIED**, and the motion to transfer is **DENIED**.

## BACKGROUND

Plaintiff, Furniture, Mattresses & More LLC ("**FMM**" or the "**Plaintiff**"), is a retail furniture store organized and operated in Bangor, Maine. Compl. ¶¶ 1, 5 (ECF No. 1). FMM's sole member is Kathy Harvey. *Id.* ¶ 7. Defendant, Texas Rustic, Inc. ("**Texas Rustic**" or the "**Defendant**"), is a wholesale furniture seller incorporated and with its principal place of business in Madisonville, Texas. *Id.* ¶¶ 2, 6. Texas Rustic has two shareholders: Carolyn Davis, who also serves as president, and her

husband. Carolyn Davis Decl. ¶ 2, Def.'s Mot. Ex. 1 (ECF No. 6-1). Shane Davis serves as a sales representative for Texas Rustic. Shane Davis Decl. 1, Def.'s Reply Pl.'s Opp'n Mot. Dismiss Ex. 1 ("Def.'s Reply") (ECF Nos. 9 & 9-1).

At an April 2018 furniture show in North Carolina, Ms. Harvey was introduced to Shane Davis through Michael Butter, allegedly Texas Rustic's independent sales representative. Compl. ¶¶ 7, 8. At that initial meeting, Ms. Harvey viewed samples of the furniture that Texas Rustic was offering for sale. *Id.* ¶ 8. Mr. Davis allegedly made several representations to Ms. Harvey, including that there had been no customer complaints about the furniture and that the furniture carried a 1-year warranty against defects. *Id.* ¶¶ 10–12. Shortly thereafter, FMM placed its first order for Texas Rustic's furniture, which was shipped to Maine on April 20, 2018. *Id.* ¶ 13, Ex. 1 at 2 (ECF No. 1-1). Between April and December of 2018, Texas Rustic supplied furniture to FMM with a total product cost of $437,594.50 and a shipping cost of $157,835.00.[1] Compl. ¶ 14; Def.'s Mot. 1.

In October of 2018, FMM began receiving complaints from customers that the wooden furniture supplied by Texas Rustic was cracking and splitting at normal room temperatures. Compl. ¶ 16. FMM notified Texas Rustic of the problem on November 5, 2018, stating that the furniture did not conform to the samples provided at the North Carolina show. *Id.* ¶¶ 17–19. FMM subsequently informed Texas Rustic on

---

[1]     The "Invoices Breakdown" sheet provided by the Plaintiff appears to show that the total value of the shipped furniture was $423,202.50 and the total cost of shipping was $157,835.50. Compl. Ex. 1 (ECF Nos. 1 & 1-1). However, the sheet also reflects over $14,000 in credit paid by Texas Rustic, and both parties state that the total product cost was over $437,000. Compl. ¶ 14; Def.'s Mot. Dismiss 1 ("Def.'s Mot") (ECF No. 6). Thus, I use that latter figure here.

December 4, 2018, not to manufacture any additional furniture for FMM. *Id.* ¶ 20. Later in December of 2018, Mr. Davis and another Texas Rustic employee traveled to Bangor to inspect the furniture. *Id.* ¶ 21. Mr. Davis allegedly assured Ms. Harvey that Texas Rustic would cure the nonconforming furniture in FMM's warehouse and authorized a nominal credit to FMM for the nonconforming models he observed. *Id.* ¶¶ 21–25. Texas Rustic later informed FMM that it would change the terms of payment to a "factor of 30 days" to allow necessary time to cure. *Id.* ¶ 27. Based on these assurances, FMM received three shipments of furniture from Texas Rustic in December of 2018. *Id.* ¶¶ 28–30. FMM ultimately canceled all orders on December 24. *Id.* ¶ 29. On December 28, within thirty days of the alteration of the payment agreement, a collection agency contacted FMM and stated that its account with Texas Rustic was delinquent, a characterization that FMM says was false. *Id.* ¶¶ 31, 34.

On January 24, 2019, FMM sent Texas Rustic a Notice of Rejection of Defective Goods and a Notice of Revocation of Acceptance of Defective Goods. *Id.* ¶ 38. In the following weeks, attorneys for both parties communicated via email and telephone regarding a possible out-of-court resolution of the dispute. Aff. of Gregory P. Dorr ¶¶ 5–10, Exs. C–F, Pl.'s Ex. 2 (ECF No. 8-2). In the course of these communications, the Plaintiff's attorney provided the Defendant with a draft of the Complaint. *Id.* ¶ 8.

On April 11, 2019,[2] the Plaintiff filed this action, which contains nine claims: (1) breach of contract, (2) breach of sales contract, (3) breach of express warranty, (4)

---

[2] The Defendant notes that it did not receive service of this case until after it filed the action in Texas. But the "Federal Rules of Civil Procedure provide that a civil action is commenced upon the filing of a complaint with the court." *Novello v. Randall*, 930 F. Supp. 693, 697–98 n. 5 (D.N.H. 1996). Thus, "[f]or purposes of determining first-filed status as between two federal suits, the general rule is

breach of implied warranties, (5) rejection of goods, (6) revocation of acceptance of goods, (7) unjust enrichment, (8) defamation, and (9) punitive damages. Compl. ¶¶ 44–84.

On May 9, 2019, the Defendant filed suit against the Plaintiff in Texas State Court for declaratory judgment and breach of contract. The Plaintiff removed that case to the United States District Court for the Southern District of Texas, where it is currently pending.

## LEGAL STANDARD

On a motion to dismiss under 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists over the defendant. *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 16 (1st Cir. 2019). Absent an evidentiary hearing,[3] I apply the "prima facie standard" to determine if the plaintiff has met this burden. *Id.* Under this "least taxing" standard, the plaintiff must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Id.* (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)); *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). The plaintiff

---

that jurisdiction relates back to the time of the filing of the complaint," not the time of service. *Id.* Further, correspondence submitted by the Plaintiff reveals that Plaintiff's counsel repeatedly sought confirmation that Defendant's predecessor counsel would accept service. Aff. of Gregory P. Dorr, Exs. D–I, Pl.'s Ex. 2 (ECF Nos. 8-2). The Plaintiff should not be penalized for any delay in service.

[3]     A district court can apply several methods to determine whether the plaintiff has established the existence of personal jurisdiction. The "most conventional of these methods" is the prima facie method, which does not require an evidentiary hearing. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50–51 (1st Cir. 2002). As neither party has requested an evidentiary hearing or has objected to the application of the prima facie method, I apply that method here.

"ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts." *PREP Tours*, 913 F.3d at 16 (internal quotations omitted). However, I must "accept the plaintiff's (properly documented) evidentiary proffers as true . . . and construe them in the light most congenial to the plaintiff's jurisdictional claim." *Prairie Eye Ctr.*, 530 F.3d at 26 (internal quotations omitted); *see also Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

On a motion to transfer venue, the burden of proof falls upon the party seeking the transfer. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). Venue is appropriate in a district in which "a substantial part of the events or omissions giving rise to the claim occurred," or "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(2)–(3). "[A] district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In doing so, the district court may consider "the convenience of parties and witnesses," as well as "the interest of justice." 28 U.S.C. § 1404(a). However, there is a strong presumption in favor of the plaintiff's choice of forum, and, if "identical actions are proceeding concurrently in two federal courts, . . . the first filed action is generally preferred." *Coady*, 223 F.3d at 11 (citing *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)).

**DISCUSSION**

The Defendant raises two arguments as part of these pending motions: (1) that this Court lacks personal jurisdiction over it and (2) that this case should be transferred to the United States District Court for the Southern District of Texas where a related action is pending. The Plaintiff counters that personal jurisdiction is present here and that transfer is improper because this action preceded the Texas case.

## I. Personal Jurisdiction

A court may have two types of personal jurisdiction over a defendant: general or specific. *See Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010). Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Id.* (internal quotations omitted). General jurisdiction is broader and encompasses actions unrelated to such contacts. *Id.* The Plaintiff asserts that both general and specific jurisdiction are present here.

Each type of jurisdiction must comport with the forum state's long-arm statute and with the Due Process Clause of the Fourteenth Amendment. *See LP Solutions LLC v. Duchossois*, 907 F.3d 95, 102 (1st Cir. 2018); *Cossaboon*, 600 F.3d at 32. Maine's long-arm statute specifically identifies the "transaction of any business within this State" as conduct conferring personal jurisdiction. 14 M.R.S.A. § 704-A(2). Maine's statute also provides that,

> to insure maximum protection to citizens of this State, [this section] shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment.

*Id.* § 704-A(1); *see also LP Solutions*, 907 F.3d at 102. Under the Due Process Clause, a court may "exercise jurisdiction over an out-of-forum defendant only if, with respect to the claims at issue, the defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *PREP Tours,* 913 F.3d at 17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal alterations and quotations omitted).

## A.    General Jurisdiction

A court may exercise general jurisdiction over a foreign corporation "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotations omitted); *see also Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016). This test is "considerably more stringent than that applied to specific jurisdiction questions." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001) (citing *Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998)). Because I find below that specific jurisdiction over the Defendant exists, it is unnecessary for me to decide whether general jurisdiction also exists.

## B.    Specific Jurisdiction

A finding of specific jurisdiction "depends on an affiliation between the forum and the controversy underlying the plaintiff's claims." *PREP Tours*, 913 F.3d at 17 (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (internal alterations and quotations omitted). The First Circuit applies a three-part test to determine whether this "minimum contacts" requirement is met. *Id.* First, the

plaintiff's claim must be sufficiently related to the defendant's in-forum activities; second, the defendant must have purposefully availed itself of the privilege of doing business in the forum state; and third, assertion of jurisdiction over the defendant must be reasonable. *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018).

The First Circuit has made clear that the mere existence of a contract is insufficient to establish minimum contacts. *See Swiss Am. Bank*, 274 F.3d at 621. Rather, the court must apply a "contract-plus" analysis. *See Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999). Under this approach, I focus on "the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) (internal quotations omitted); *see also C.W. Downer & Co. v. Bioriginal Food & Science Corp.*, 771 F.3d 59, 66 (1st Cir. 2014).

### 1.    Relatedness

The relatedness prong of the personal jurisdiction test "ensures fundamental fairness by protecting a defendant from being hauled into an out-of-state forum based on a single contact with that forum that is wholly unrelated to the suit at issue." *Swiss Am. Bank*, 274 F.3d at 623. "[T]he claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). "In this inquiry, foreseeability is critical." *Id.* However, this is a "flexible, relaxed standard," requiring only a "demonstrable nexus between the complaint's claims and

the activities in the forum that properly may be attributed to the defendants." *PREP Tours*, 913 F.3d at 18 (internal quotations omitted).

As an initial step, I must identify the Plaintiff's claims and the Defendant's alleged contacts with Maine. *See Swiss Am. Bank*, 274 F.3d at 621. Here, the Plaintiff asserts nine causes of action. Seven of these are based in contract and arise out of the Defendant's shipment of allegedly nonconforming goods. Compl. ¶¶ 44–72. The Plaintiff identifies several activities by the Defendant that relate to these contract claims:

- Between April and December of 2018, the Defendant sent nineteen shipments of furniture to the Plaintiff's retail store in Bangor. These shipments contained thousands of items and cost over $437,000. Compl. ¶ 14, Ex. 1.

- The Defendant sent invoices and credit memoranda to the Plaintiff in Maine. Pl.'s Opp'n Def.'s Mot. Dismiss 7 ("Pl.'s Opp'n") (ECF No. 8).

- Shane Davis communicated via phone with the Plaintiff's managing member, who was located in Maine, about "the formation and performance of the contract or series of contracts and the supply of furniture." Pl.'s Opp'n 9; Shane Davis Decl. 1.

- Mr. Davis and another employee traveled to Plaintiff's Bangor store to inspect the furniture and, while there, made several representations regarding the condition of the furniture, plans to cure, and changes in the credit arrangement between the entities. Pl.'s Opp'n 9–10; Compl. ¶¶ 21–27.[4]

---

[4]     In addition, the Plaintiff alleges that Mr. Butter was a sales representative of Texas Rustic and regularly communicated with the Plaintiff, both in person in Maine and electronically to the Plaintiff in Maine, about additional furniture orders from the Defendant. Pl.'s Opp'n Def.'s Mot. Dismiss 7–9 ("Pl.'s Opp'n") (ECF No. 8). The Defendant contends that Mr. Butter "was not Texas Rustic's agent," and states that Mr. Butter issued his own purchase orders to Texas Rustic for the initial shipments to FMM. Def.'s Reply Pl.'s Opp'n Mot. Dismiss 3–4 ("Def.'s Reply") (ECF No. 9). These orders, according to the Defendant, show that Mr. Butter's company was Texas Rustic's customer, rather than FMM. *Id.* However, the Plaintiff has supported its statements about Mr. Butter with an affidavit from Ms. Harvey. Aff. of Kathy Harvey ¶¶ 4, 6, Pl.'s Ex. 1 (ECF No. 8-1). Because I "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record" and give "credence to the plaintiff's version of genuinely contested facts," I accept the Plaintiff's

Despite acknowledging that these activities occurred, the Defendant asserts that it "has conducted no activities whatsoever in the State of Maine." Def.'s Mot. 7. Rather, its "sole connection" to the State "is that it received orders in the State of Texas from FMM, a Maine-based company." *Id.* at 8. As such, the Defendant contends that the Plaintiff's claims cannot arise out of these non-existent contacts. *Id.* In addition, according to the Defendant, any alleged travel to Maine by Defendant's personnel occurred "after the furniture cracked" and thus "after the claims arose." Def.'s Reply 5–6. Therefore, the claims cannot possibly "arise out of" those activities. *Id.*

The Defendant's argument is disingenuous and misunderstands the relatedness requirement. The Plaintiff can satisfy this prong by showing that the Defendant's activities in Maine were "instrumental" in the breach of the contract. *See Phillips Exeter Acad.*, 196 F.3d at 289. Texas Rustic's activities in Maine include the alleged breach itself: the repeated shipment of nonconforming furniture into the state.[5] Thus, it is not merely that the Defendant was linked to Maine through some abstract contractual relationship. Rather, the Defendant's direct shipment of

_____

characterization here. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). In any event, the Plaintiff has also provided nineteen invoices and credit memos that show direct sales between FMM and Texas Rustic. Thus, even disregarding Mr. Butter's role in the relationship, I find sufficient contacts to meet due process requirements.

[5]     The Defendant asserts that it is "undisputed that the furniture in question was delivered to FMM's motor carrier in Texas and the sale was completed at that point." Def.'s Reply 5. However, the First Circuit "has long found this argument irrelevant to the jurisdictional analysis." *Knox v. MetalForming, Inc.*, 914 F.3d 685, 694 (1st Cir. 2019); *see also Benitez-Allende v. Alcan Aluminio do Brasil, S A.*, 857 F.2d 26, 30 (1st Cir. 1988) (Breyer, J.) ("The fact that title to the [products] passed in [a foreign country] is beside the point, for '[i]f *International Shoe* stands for anything . . . it is that a truly interstate business may not shield itself from suit by a careful but formalistic structuring of its business dealings.'").

furniture is the entire basis of the Plaintiff's contract-based causes of action. Those claims are thus "related to" the Defendant's contacts with Maine.

The Defendant's point about the timing of Mr. Davis's Maine visit also misses the mark. It is true that the First Circuit has stated that "contacts coming into existence after the cause of action arose will not be relevant." *Harlow v. Children's Hosp.*, 432 F.3d 50, 62 (1st Cir. 2005); *see also Unicomp, Inc. v. Harcros Pigments, Inc.*, 994 F. Supp. 24, 26 n.3 (D. Me. 1998). However, the First Circuit has subsequently noted that this statement was made in the specific context of the "discrete-in-time tort" of medical malpractice. *See Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 11 (1st Cir. 2018). In this case, Texas Rustic's alleged breaches continued after Mr. Davis's visit to Maine. FMM states that it accepted three additional shipments of nonconforming furniture in December of 2018 in reliance on Mr. Davis's representations made during and after his visit. Compl. ¶¶ 21–30.

Furthermore, even if Mr. Davis's trip to Maine is disregarded, there were earlier, virtual communications. Mr. Davis concedes that he communicated via phone with the Plaintiff's managing member, who was located in Maine, "concerning the purchase and sale of the furniture in question." Shane Davis Decl. 1. Although the Defendant made or received those calls from Texas, "mail or telephone contacts" can serve as relevant contacts "[w]hen physical presence is lacking." *Swiss Am. Bank*, 274 F.3d at 622. In summary, the Defendant had several contacts with Maine that are directly related to the Plaintiff's contractual claims.

The remaining two causes of action are based in tort. In a tort case, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." *Phillips Exeter Acad.*, 196 F.3d at 289. This inquiry "focuses on whether the defendant's in-forum conduct caused the injury or gave rise to the cause of action." *Swiss Am. Bank*, 274 F.3d at 622. Here, the Plaintiff claims that the Defendant published a defamatory delinquency report about the Plaintiff and that the Plaintiff is entitled to punitive damages. Compl. ¶¶ 73–84. These claims stem from a debt collection letter mailed to FMM in Maine. Compl. Ex. 2 (ECF No. 1-2). The letter appears attributable to Texas Rustic, as it states that the collection agency has been authorized to collect Texas Rustic's outstanding balance. *Id.* As such, these causes of action have a "demonstrable nexus" with the Defendant's activities in Maine and satisfy the relatedness criteria. *See PREP Tours*, 913 F.3d at 18.

## 2. Purposeful Availment

The second prong—the purposeful availment inquiry—focuses on the defendant's "intentionality." *Swiss Am. Bank*, 274 F.3d at 623. The plaintiff must point to "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985); *see also PREP Tours*, 913 F.3d at 19. Due to the nature of this inquiry, "the two cornerstones of purposeful availment are voluntariness and foreseeability." *PREP Tours*, 913 F.3d at 19–20 (internal quotations omitted). Voluntariness requires that the defendant's contacts with the forum "proximately result" from the defendant's own actions, rather than the unilateral action of another. *Id.* at 20. Foreseeability requires a showing that

the defendant's connections with the forum "are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King*, 471 U.S. at 474) (internal quotations omitted). Thus, "random, fortuitous, or attenuated contacts" are insufficient. *Knox v. MetalForming, Inc.*, 914 F.3d 685, 691 (1st Cir. 2019). In contracts cases, jurisdiction can be "reasonably foreseeable when the defendant deliberately directed its efforts toward the forum state" or "entered a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State." *LP Solutions*, 907 F.3d at 104 (internal alterations and quotations omitted).

In this case, the Defendant voluntarily entered into sales contracts with a Maine retailer. It is true that the initial order stems from activities in North Carolina and that the Defendant's "awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." *Prairie Eye Ctr.*, 530 F.3d at 28. But Texas Rustic was not merely aware that FMM operated in Maine when it accepted the orders, nor was that first order the only contact. Rather, Texas Rustic "voluntarily and directly" shipped hundreds of thousands of dollars worth of furniture to FMM in Maine. *See Jackson v. Sunset Ladder Co.*, 2015 WL 7451179, at *6 (D. Me. Nov. 23, 2015) (finding the purposeful availment prong satisfied where the defendant repeatedly and directly shipped products into Maine over four years despite not maintaining a physical presence in the State). FMM has provided documentation of nineteen purchase invoices and two credit memos spanning eight months and containing thousands of items worth over $400,000. Compl. Ex. 1. These shipments

were part of Texas Rustic's "regular flow or regular course of sale" and thus can "make jurisdiction foreseeable." *Knox*, 914 F.3d at 691 (internal quotations omitted).

Texas Rustic's shipments to FMM enabled it to reach Maine consumers and take advantage of the Maine market. *See Lulu, Inc. v. Chesapeake Boats, Inc.*, 2009 WL 1448464, at *8 (D. Me. May 21, 2009) ("[I]t does not offend due process if a court located in Maine exercises jurisdiction over an out-of-state defendant who knowingly and voluntarily directed its products at a Maine consumer."). Through those shipments, the Defendant received substantial income and could have "reasonably anticipated" being haled into court in Maine. *See Plixer*, 905 F.3d at 10 (purposeful availment prong was satisfied, in part, because defendant's contacts had yielded over $200,000 in business over three-and-a-half years).

Although the volume of sales is not dispositive, *see Knox*, 914 F.3d at 692, there are additional factors here. As noted above, Mr. Davis regularly communicated with Ms. Harvey, who was located in Maine, about Texas Rustic's performance under and modification of the contract. Aff. of Kathy Harvey ¶ 7, Pl.'s Ex. 1 (ECF No. 8-1); Shane Davis Decl. 1. Texas Rustic directed where its products went and maintained channels of communication with the Plaintiff. *Compare Knox*, 914 F.3d at 693–94 (noting that defendant manufacturer had the power to direct where its products were sent by distributor and communicated directly with consumers in the forum), *with J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 878, 886 (2011) (plurality opinion) (noting that defendant manufacturer had no control over end location of its products and had no other relationship with consumers in the forum).

This is not a typical stream-of-commerce case, where a defendant "cannot necessarily predict or control where downstream [its] products will land." *Plixer*, 905 F.3d at 8. Texas Rustic is a distributor that voluntarily and intentionally chose to contract with a Maine retailer and ship its products into Maine. As such, it should have reasonably anticipated that it might be subject to the jurisdiction of Maine courts for a cause of action arising from those sales and shipments. *Jackson*, 2015 WL 7451179, at *6. "By repeatedly contracting to sell and ship products" to Maine, Texas Rustic "purposefully availed itself of the privilege of conducting business in Maine and derived the benefits and protections that Maine law afforded to it." *Id.*

### 3.    Reasonableness

The third prong considers the reasonableness of exercising jurisdiction over a defendant. Courts apply the five "gestalt factors," which "put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). These factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Adelson v. Hananel*, 510 F.3d 43, 51 (1st Cir. 2007). The defendant bears the burden of establishing that the exercise of jurisdiction would be unreasonable. *Plixer*, 905 F.3d at 122.

The Defendant first argues that its burden "of being haled into court in Maine is certainly no less than the burden imposed on FMM in being required to litigate its

claim" in Texas. Def.'s Mot. at 8. But this argument misses the crux of the burden factor, which is "only meaningful where a party can demonstrate some kind of special or unusual burden." *Baskin-Robbins*, 825 F.3d at 40 (adding that the inquiry is not about "relative convenience"). The Defendant identifies no special burden that this Court's jurisdiction would impose.

The Defendant next states that "Maine has no particular interest in hearing claims against a party who has no real contacts with the state." Def.'s Mot. at 8. This, of course, disregards all of the contacts identified above. It also ignores that Maine has a substantial interest in a dispute involving nonconforming furniture sent to a resident retailer and ultimately purchased by consumers in Maine. *See BlueTarp Financial, Inc. v. Matrix Const. Co.*, 709 F.3d 72, 83 (1st Cir. 2013) ("Maine has an interest in redressing harms committed against its companies by out-of-state companies.").

Finally, the Defendant argues that the "Plaintiff's interest in obtaining convenient and effective relief does not outweigh Texas Rustic's interest in having its claims adjudicated in the forum where the contract was performed." Def.'s Mot. at 8–9. However, "[c]ourts regularly cede some deference to the plaintiff's choice of forum." *Baskin-Robbins*, 825 F.3d at 41. And, even if the State of Texas has an interest in this dispute, the Defendant "has not demonstrated how [that interest] might possibly render jurisdiction in [Maine] *unconstitutional*." *See Burger King*, 471 U.S. at 483.

For the reasons discussed above, I conclude that this Court's exercise of personal jurisdiction over Texas Rustic is consistent with due process. The

relatedness and purposeful availment requirements are satisfied, and the gestalt factors do not counsel otherwise.

## II.    Transfer of Venue

The Defendant also moves to transfer this case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations omitted).

One of the key factors is whether the current case preceded an identical case in the transferee district. In a choice-of-venue decision, the so-called "first-filed rule" favors the action that was filed first in order to "further sound judicial administration" and avoid "duplicative efforts by courts and parties." *Galley v. Kreutzig*, 2015 WL 2349373, at *6 (D. Me. May 15, 2015); *see also Cianbro*, 814 F.2d at 11. However, this rule is "not to be applied in a mechanical way." *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 127 (D. Mass. 2012). "There are at least two widely-recognized exceptions to the first-filed rule: where (1) there are 'special circumstances' justifying a transfer, such as where a party engages in misleading conduct to win a 'race to the courthouse'; or (2) the balance of convenience substantially favors the second-filed action." *Id.*

Neither party has disputed that this action was filed four weeks before the Texas action or that both actions substantially overlap.[6] I will therefore consider whether the Texas action should be given priority based on either of the above exceptions.

## A.    Special Circumstances

The first-filed presumption may be overcome when "special circumstances" are found. *See Getty Petroleum Mktg., Inc. v. 2211 Realty, LLC*, 2011 WL 2489988, at *4 (D. Mass. June 17, 2011). Special circumstances may exist when a plaintiff "(1) misleads the defendant into [forgoing] litigation in order to negotiate a settlement and then files suit or (2) reacts to a defendant's notice of imminent filing by 'literally sprinting to the courthouse the same day.' " *Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16 (D. Mass 2002) (quoting *Veryfine Prods., Inc., v. Phlo Corp.*, 124 F. Supp. 2d 16, 22–25 (D. Mass. 2000)).

The Defendant argues that the second circumstance is present here. It asserts that the Plaintiff's initiation of this suit was an "anticipatory filing" because the collection agency letter had put FMM on notice that Texas Rustic intended to file suit. Def.'s Mot. 10.

---

[6]    The Texas action involves the same contracts and shipments of furniture. In that case, the Defendant seeks "declaratory judgment that the goods in question conformed to the description contained in the contract between the parties" and that the goods were sold "without warranty." *See* Def.'s Mot. Ex. 2 ¶¶ 10, 11 (ECF No. 6-2). Alternatively, the Defendant claims that FMM breached the parties' contract by failing to pay for the furniture. *Id.* ¶¶ 12–16. As such, the existence of both actions "raise[s] the specter of 'conflicting judgments.'" *Bath Iron Works Corp. v. Congoleum Corp.*, 2019 WL 2110499, at *3 (D. Me. May 14, 2019) (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)).

The record shows otherwise. Although Texas Rustic did send two notices regarding the unpaid account and possible future legal action—one through the collection agency on December 28, 2018, and one through its own attorney on February 14, 2019—both were sent after FMM had contacted Texas Rustic about the nonconformities. *See Redzone Wireless, LLC v. Netgear, Inc.*, 2017 WL 1379320, at *2 (D. Me. Apr. 14, 2017) (holding that filing a lawsuit days after receiving demand letter was not an anticipatory filing because letter capped a two-month period during which the parties' relationship had already deteriorated).

In addition, neither communication drove FMM immediately to the courthouse. Rather, the parties continued to negotiate settlement options for over a month. *See* Aff. of Gregory P. Dorr, Exs. C–F. During that time, FMM expressed a willingness to settle, forewarned of legal action, and sent a draft of its complaint. *See id.* These facts indicate that the negotiations were "ongoing" and that both parties were "aware that litigation could occur at any time, brought by either side." *Veryfine Prods.*, 124 F. Supp. 2d at 23 ("When the negotiations are long-term and ongoing and there is no false implication that a party will refrain from litigation during those negotiations, the first-filed presumption may remain intact."); *see also Galley*, 2015 WL 2349373, at *6 (finding that, because defendant waited two months to sue for breach of contract, "his complaint [did] not reveal a 'race to the courthouse' that would justify abrogation of the first-filed rule") (internal quotations omitted).

As a result, I conclude that this action was not an anticipatory filing by the Plaintiff and the "special circumstances" exception to the first-filed rule is inapplicable.

## B.     Balance of Convenience

The first-filed rule can also be overcome when the defendant shows "that its choice of forum is substantially more convenient than that chosen by the plaintiff." *Holmes Grp.*, 249 F. Supp. 2d at 17. Such a determination is made "on an individualized, case-by-case basis, in the sound discretion of the court." *TransCanada Pwr. Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 351 (D. Mass. 2005) (citing *Stewart Org., Inc.*, 487 U.S. at 29).

The Defendant makes three arguments as to why Texas is a preferable forum: (1) the "convenience of the witnesses and parties would be better served in Texas;" (2) the contract was substantially performed in Texas; and (3) the furniture manufacturer, which is a Mexican company, would be amenable to jurisdiction in Texas but not Maine and might be a necessary party under Fed. R. Civ. P. 19. Def.'s Mot. 10.

The Defendant fails to carry its burden in asserting the first two arguments. In support of its convenience argument, the Defendant notes that all of its employees are located in Texas and that the owners and employees of the manufacturer are located nearby in Mexico. Def.'s Mot. 10. However, transfer of venue is inappropriate "where its effect merely shifts the inconvenience from one party to another." *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 295 (D. Mass. 2017). As the Plaintiff points out, both its customers and the allegedly nonconforming furniture

they received are located in Maine. Pl.'s Opp'n 15. Transferring the case to Texas would merely shift the burden of inconvenience onto the Plaintiff. On the second argument, the Defendant fails to identify any facts establishing that the contract was more substantially performed in Texas than in Maine. More importantly, the Defendant's argument does not overcome the "strong presumption" in favor of the Plaintiff's chosen forum. *See Coady*, 223 F.3d at 11; *Redzone*, 2017 WL 1379320, at *2.

The Defendant's third argument fails as well. The Defendant briefly noted in its initial motion that the furniture manufacturer might be a necessary party not subject to personal jurisdiction in Maine, and it argued that this tipped the balance of convenience in the favor of transferring the action to Texas. Def.'s Mot. 10. But the Defendant fails to develop this argument, providing no facts to support a finding that the manufacturer is a necessary party nor even affirmatively stating that it is.[7] With such "limited and conclusory assertions," the Defendant "has failed to satisfy [its] burden of establishing that the absent individuals must be joined pursuant to Rule 19." *United States v. Belanger*, 799 F. Supp. 2d 98, 101 (D. Me. 2011); *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention

---

[7]     The Defendant also appears to mischaracterize the Plaintiff's action. According to the Defendant, the Plaintiff "alleges that the furniture was defectively manufactured" and that its "entire case is predicated . . . on the claim that the furniture was defectively manufactured." Def.'s Reply 2. However, the Plaintiff's Complaint nowhere asserts a claim for any manufacturing defect. Rather, the Plaintiff has asserted breach-of-contract claims, alleging that the furniture supplied by the Defendant was nonconforming and breached express and implied warranties. *See* Compl. at ¶¶ 44–84. Neither party has asserted that the manufacturer was party to those contracts, and thus it is unclear, at this time, how the manufacturer's participation is necessary to resolve this dispute.

a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").[8]

Furthermore, a determination that the manufacturer is an indispensable party not subject to personal jurisdiction in Maine requires a highly fact-specific inquiry. It is premature to dismiss or transfer the action on these grounds at this early stage, particularly when there is no indication that the manufacturer intends to challenge personal jurisdiction. *See Blacksmith Investments, LLC v. Cives Steel Co.*, 228 F.R.D. 66, 73–74 (D. Mass. 2005) (finding it "premature" to rule on the need to join a third party when the terms of that party's involvement were not presently before the court).

As the above analysis demonstrates, the Defendant has failed to establish the existence of either exception to the first-filed rule. As a result, I hold that the rule applies and the Plaintiff's choice of forum prevails.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's motion to dismiss and **DENIES** the Defendant's motion to transfer venue.

SO ORDERED.

---

[8]     In its reply brief, the Defendant—for the first time—asserts that Rule 19 "mandates dismissal" because the manufacturer is a "Required Party." Def.'s Reply 1–2. But this is a different argument than the one raised in Defendant's initial brief, which only suggested the possibility that the manufacturer was a required party and only in the context of the convenience factors for transfer. Further, like the initial motion, the reply brief provides no basis for the assertion that the manufacturer is not subject to personal jurisdiction in Maine.

/s/ Nancy Torresen
_____
United States District Judge

Dated this 25th day of September, 2019.